**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on November 16, 2009**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL NO. 10-** |
| | : | |
| | : | **GRAND JURY ORIGINAL** |
| | : | |
| v. | : | <u>UNDER SEAL</u> |
| | : | |
| | : | **VIOLATIONS:** |
| | : | **18 U.S.C. § 371 (Conspiracy);** |
| SHANNON L. WREN and | : | **18 U.S.C. § 2320 (Trafficking in** |
| STEPHANIE A. MCCLOSKEY, | : | **Counterfeit Goods or Services);** |
| | : | **18 U.S.C. § 1341 (Mail Fraud);** |
| | : | **18 U.S.C. § 2 (Aiding and** |
| | : | **Abetting Causing an Act to be Done);** |
| | : | **and 18 U.S.C. § 2323(a) and (b),** |
| | : | **28 U.S.C. § 981(a)(1)(C), and 28 U.S.C. §** |
| | : | **2461(c) (Criminal Forfeiture).** |
| | : | |
| _____ Defendants. _____ | : | |

**INDICTMENT**

The Grand Jury charges that:

**COUNT ONE – CONSPIRACY**

**INTRODUCTION**

At all times material to this Indictment:

**Integrated Circuits**

1.      An integrated circuit also referred to as "IC", "chip" or "component" is a form of

semiconductor.  It is an electronic circuit consisting of components and connectors contained on

a semiconductor chip.  Usually packaged in a plastic or ceramic case, an integrated circuit is a

sophisticated, highly miniaturized, solid-state circuit in which all the elements of the circuit are

integrated together on a single semiconductor substrate.  Integrated circuits contain tiny resistors,

capacitors, and transistors on each chip and function as amplifiers, oscillators, timers, counters,

computer memory or microprocessors.  Integrated circuits form the basis of all modern electronic

products.  Integrated circuits are used in a variety of applications including consumer electronics,

transportation, medical, aircraft, spacecraft, and military.

  2.  Counterfeit integrated circuits can result in product malfunctions or product

failures and can also cause serious bodily injury including electrical shock, electrocution, and/or

death.  Counterfeit integrated circuits can also cause significant property damage.  Counterfeit

ICs can degrade systems into which they are placed by failing to function when placed into a

product or system, by failing to function before their anticipated useful life has expired or by

failing to generate correct readings (working at less than optimal status) thereby failing or putting

systems and products at risk for failure and necessitating costly systems analysis and

replacement.  A failed IC can result in an entire computer circuit board being replaced.

  3.  Counterfeit ICs also raise national security concerns, because the history of a

counterfeit device is unknown, including who has handled it and what has been done to it.  The

counterfeits are being imported from sources in The People's Republic of China and also from a

region under the control of China, that is, The Hong Kong Special Administrative Region of the

People's Republic of China, "Hong Kong."  The devices can be altered and certain devices can

be preprogrammed.  Counterfeits can contain malicious code or hidden back doors enabling

remote systems disablement, communication interception, and computer network intrusion.

  4.  Failure of an integrated circuit can result in one of two conditions called "open

circuit" or "short circuit."  "Open circuit" means that electrical current *is not permitted to flow* as

intended.  A machine with an open circuit may fail to function or it may fail to turn the unit or its

features on.  "Short circuit" means that electrical current *is permitted to flow* at times and in

places it is not intended to flow or should not flow.  A machine with a short circuit left in the

"off" position may randomly turn back on or the power switch may fail to turn the unit off.

## Grade Markings

5.      Grade markings on integrated circuits indicate that the part is

"commercial-grade," "industrial-grade," or "military-grade."  Legitimate manufacturers subject

military-grade parts to specialized testing.  Military-grade integrated circuits are sold to the U.S.

military at a price higher than commercial or industrial-grade, because of the special

manufacturing techniques and additional testing required.  Such parts have special markings that

identify them as military-grade.  Military-grade devices are tested to function at extreme

temperatures (hot and cold) and/or to withstand extreme vibration.  Such ICs are used in military

and space applications that must function in such places as those with the extreme heat of the

desert or the extreme cold of deep sea, the atmosphere and outer space, and with extreme

vibration conditions, such as in a vehicle traveling over rocky terrain or in a missile in

acceleration during launch.

## Life Critical Application

6.      A "life critical application" refers to a part that is critical to the safe operation,

equipment effectiveness or performance of a system, the failure of which may result in serious

bodily injury or death, or significant property damage, including loss of or severe damage to the

system as well as harm to third parties and to the environment.

### Trademarks

7.      A "trademark" is a word, phrase (such as a logo), symbol or design (such as an

icon), or a combination thereof, which identifies and distinguishes the source of the goods of one

particular manufacturer from those of other manufacturers.  A trademark is often a valuable asset,

equated with the "good-will" of a business organization, which can influence consumers in

purchasing decisions.  A "word mark" and a "mark drawing" are types of trademarks.

8.      A trademark serves a variety of purposes.  First, it avoids product confusion by

allowing consumers to have confidence that two products for sale bearing the identical trademark

were manufactured by the same company and will be of the same quality.  Second, it permits

consumers to make an informed choice to purchase a name-brand good based upon past

experience, word-of-mouth, brand loyalty, and advertising impact.  Third, it enables consumers

who experience a problem with the name-brand product they have purchased to seek recourse

through the actual manufacturer by returning the goods to the seller or seeking warranty or other

recourse through the original equipment manufacturer ("OEM").  Fourth, it allows the trademark

owner to distinguish and protect its products by giving that company exclusive rights as the

trademark owner.  This permits the legitimate trademark owner to recoup investments of time,

money, labor, and creativity and to profit from its endeavors in bringing a particular product to

market.

9.      When a counterfeit mark is used in the trafficking of goods and the mark is

identical or substantially indistinguishable from the mark registered on the principal register of

the U.S. Patent and Trademark Office, such a counterfeit mark is likely to cause confusion,

mistake, and deception with consumers.

## Product Line Card

10.     A "Product line card" is a listing of the manufacturers whose products are offerred for sale.

## Certificate of Conformance

11.     A buyer may require the distributor to provide a "Certificate of Conformance" also referred to as a "COC." This certificate is a written document, completed by the distributor, which certifies, among other things, that the parts being provided are what they are represented to be and meet form, fit, and function criteria. "Form, fit, and function" is a phrase used in manufacturing to describe an item's identifying characteristics. The phrase describes physical, functional, and performance characteristics and specifications that uniquely identity a component or device and determine its interchangeability in a system. "Form" relates to size, shape, dimension, and mass. "Fit" pertains to the ability of the item to interface or connect with the system and to become an integral part thereof. "Function" means that the device is able to perform the actions that it is designed to do.

## The Defendants and Their Counterfeiting Activities

12.     **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY** and others known and unknown to the grand jury, have engaged in the interstate trafficking of counterfeit goods, that is, integrated circuits bearing counterfeit marks, in the following way. They acquired integrated circuits bearing counterfeit marks from sources of supply within China and Hong Kong, imported them into the United States, and sold them to the public via the Internet from the website http://www.visiontechcomponents.com/. The product line card for VisionTech

Components lists virtually every known manufacturer of ICs.  Among the devices imported and

sold, were those marked with purported, but counterfeit, trademarks and other markings, thereby

fraudulently indicating, among other things, that the devices were of a certain brand, a certain

date or lot code, a certain country of origin or were newer, higher quality, and/or a special grade,

such as military-grade.

### Ownership and Operation of the Inter-related Businesses

13.      Defendant **SHANNON L. WREN** owns and operates a number of inter-related

businesses.  These businesses include Carz, Inc. doing business as (DBA) VisionTech

Components, LLC, also used by **SHANNON L. WREN** as "VisionTech," or "VisionTech

Components" without reference to the entity being a limited liability company (LLC);  Infuture

Electronics, Inc., also known as Infuture Electronics doing business as VisionTech Components,

LLC;  Vision Properties, LLC;  Reborn Couture, LLC;  and Cyclone Driver, LLC.

**SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to

the grand jury, used company names and derivations of those names to conduct the counterfeiting

operations described herein.  Defendant **STEPHANIE A. MCCLOSKEY** and unindicted co-

conspirators "S.P." and "T.R." work for defendant **SHANNON L. WREN** in the counterfeiting

business operations.  Defendant **STEPHANIE A. MCCLOSKEY** is in charge of Administration

for VisionTech Components and is co-signatory on business bank accounts owned by defendant

**SHANNON L. WREN.**  Unindicted co-conspirators "S.P." and "T.R." handle sales for

VisionTech Components.

## Infuture, Inc. and Infuture Electronics

14.     Since on or about January 2, 1998 through its dissolution on September 22, 2000, defendant **SHANNON L. WREN** owned and operated Infuture, Inc., serving as the Director, President, Secretary, and Treasurer.   The street address of the principal executive office and principal business office was 2098 Whitney Place, Clearwater, FL 33760.

15.     On or about July 12, 2000, defendant **SHANNON L. WREN** opened a Regions (formerly AmSouth) bank account in the name of "Infuture Inc.," account number XXXXXX2553.   Defendant **SHANNON L. WREN** and "D.W." are the authorized signatories on the account.   The account address is 2098 Whitney Place, Clearwater, Florida 33760. However, the mailing address for statements is 5120 110th Avenue North, Clearwater, Florida 33760. On June 19, 2002, a Regions (formerly AmSouth) bank account in the name of "Infuture Electronics," was opened, that is, account number XXXX8746.   The address is 10810 72nd Street, Suite 203, Largo, Florida 33777.   However, the mailing address for statements is Infuture Electronics DBA VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760.   Also on June 19, 2002, another Regions (formerly AmSouth) bank account was opened in the name of "Infuture Electronics," that is, account number XXXXXX8681. The authorized signatories are defendants **SHANNON L. WREN** and **STEPHANIE A. MCCLOSKEY**.   The account address is 10810 72nd Street, Suite 203, Largo, Florida 33777.   However, the mailing address for statements is Infuture Electronics DBA VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760.

**Carz, Inc., VisionTech Components, and VisionTech Components, LLC**

16.    "VisionTech Components" is a business entity that at all times relevant herein operates at 5120 110th Avenue North, Clearwater, Florida 33760.

17.    Since on or about June 22, 2002 through its administrative dissolution September 26, 2008, defendant **SHANNON L. WREN** owned and operated Carz, Inc., serving as the Director, President, Secretary, and Treasurer. The street address of the principal executive office and principal business office was 2098 Whitney Place, Clearwater, FL 33760. On March 27, 2003, defendant **SHANNON L. WREN** became a Director, Vice President, and Secretary, and "D.W." became a Director, President and Treasurer. On February 3, 2005, the new mailing address for Carz, Inc. was changed to 5120 110th Avenue North, Clearwater, Florida 33760. On March 3, 2005, the "entity name" was changed to "Carz, Inc. DBA: VisionTech Components." Defendant **SHANNON L. WREN** became the Director, President, Secretary, and Treasurer. The business address was changed to 5120 110th Avenue North, Clearwater, Florida 33760.

18. On or about February 1, 2002, defendant **SHANNON L. WREN** opened a Regions (formerly AmSouth) bank account in the name of "Carz, Inc.," account number XXXXXX**1332**. Defendant **SHANNON L. WREN** is the authorized signatory on the account. The account address was 2098 Whitney Place, Clearwater, Florida 33760. However, the mailing address for statements is 5120 110th Avenue North, Clearwater, Florida 33760. This bank account was closed on January 9, 2007. On or about May 10, 2007, defendant **SHANNON L. WREN** opened a Regions bank account in the name of "VisionTech Components," account number XXXX**6956**. Defendants **SHANNON L. WREN** and **STEPHANIE A. MCCLOSKEY** are the

authorized signatories on the account. The account address is 5120 110th Avenue North, Clearwater, Florida 33760. This bank account was closed on January 18, 2008. On or about December 12, 2007, defendant **SHANNON L. WREN** opened a Regions bank account in the name of "VisionTech Components," account number XXXXXX0799. Defendants **SHANNON L. WREN** and **STEPHANIE A. MCCLOSKEY** are the authorized signatories on the account. The account address is 5120 110th Avenue North, Clearwater, Florida 33760. This bank account is an Operating Account. Also on or about December 12, 2007, defendant **SHANNON L. WREN** opened a Regions bank account in the name of "VisionTech Components LLC," account number XXXXXX0802. Defendants **SHANNON L. WREN** and **STEPHANIE A. MCCLOSKEY** are the authorized signatories on the account. The account address is 5120 110th Avenue North, Clearwater, Florida 33760. This bank account is a Merchant Account. On or about February 26, 2009, defendant **SHANNON L. WREN** opened a Regions bank account in the name of "VisionTech Components LLC," account number XXXXXX2496. Defendants **SHANNON L. WREN** and **STEPHANIE A. MCCLOSKEY** are the authorized signatories on the account. The account address is 5120 110th Avenue North, Clearwater, Florida 33760.

### Vision Properties, LLC

19. On or about February 9, 2004, Vision Properties, LLC, was formed. Defendant **SHANNON L. WREN** is the manager. The address when the company was formed was 10810 72nd Street, Suite 203, Largo, Florida 33777. As of March 20, 2006, the principal place of business was changed to 5120 110th Avenue North, Clearwater, Florida 33760. As of February 28, 2007 defendant **STEPHANIE A. MCCLOSKEY** is referenced as Director of

Vision Properties, LLC.   A Regions bank account was opened in the name of "Vision Properties," account number **XXXX3055**.   Shannon WREN is the authorized signatory on the account.

## Cyclone Driver, LLC

20.     Since on or about December 12, 2008, Cyclone Driver, LLC was formed.   On or about January 16, 2009, defendant **SHANNON L. WREN** opened a Regions bank account in the name of "Cyclone Driver LLC," account number XXXX1459.   Defendant **SHANNON L. WREN** is the authorized signatory on the account.   The account address is 5120 110th Avenue North, Clearwater, Florida 33760.

## Reborn Couture, LLC

21.     On or about March 18, 2008, Reborn Couture, LLC, was formed.   Defendant **SHANNON L. WREN** is the manager, with an address of 12540 74th Avenue North, Seminole, Florida 33776.   On May 7, 2008, the name of the LLC "SoHo Fashionz, LLC" was changed to "Reborn Couture, LLC."   Defendant **SHANNON L. WREN** opened a Regions bank account in the name "Reborn Couture, LLC," account number **XXXX0991**.   The account was closed on December 18, 2008.   The mailing address is 701 South Howard Avenue, Tampa, Florida 33606.   On August 14, 2008, defendant **SHANNON L. WREN** opened a Regions bank account in the name "Reborn Couture, LLC," account number XXXXXX9778.   The mailing address is 701 South Howard Avenue, Tampa, Florida 33606.   "N.V." was granted signatory authority on or about August 14, 2008, but was removed from signatory authority on or about February 25, 2009.   On or about December 18, 2008, defendant **SHANNON L. WREN** opened a Regions bank account in the name "Reborn Couture, LLC," account number XXXX1033.   The mailing address

-10-

is 701 South Howard Avenue, Tampa, Florida 33606. This is a merchant account.

### The Website: www.visiontechcomponents.com

22.     Defendant **SHANNON L. WREN** and others known and unknown to the grand

jury, operate the website www.visiontechcomponents.com, which advertises for sale numerous

brand-name and trademark-protected integrated circuits. The website is available to anyone

accessing the Internet. The VisionTech Components website contains a "product line card,"

which is a listing of the manufacturers whose products are offered for sale. The product line card

for VisionTech Components lists virtually every known manufacturer of ICs. On the opening

page of the VisionTech Components website is a photographic image of a jet fighter plane.

### THE CONSPIRACY

23.     From on or about December 6, 2006 and continuing thereafter until at least on or

about September 14, 2010, defendants **SHANNON L. WREN, STEPHANIE A.**

**MCCLOSKEY,** and others known and unknown to the grand jury, within the District of

Columbia and elsewhere, did unlawfully, knowingly, and willfully, conspire and agree together

and with each other, and with other persons both known and unknown: to commit offenses

against the United States, that is, Trafficking in Counterfeit Goods or Services, in violation of

Title 18, United States Code, Section 2320(a); and Mail Fraud, in violation of Title 18, United

States Code, Section 1341.

### GOAL OF THE CONSPIRACY

24.     It was a goal of the conspiracy that defendants **SHANNON L. WREN,**

**STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, would enrich the businesses through which they operated and would enrich themselves thereby deriving private and commercial financial gain by importing, obtaining control of, selling, distributing, and transporting in interstate and foreign commerce integrated circuits bearing counterfeit marks, some of which were further falsely represented as being "military-grade."

## MANNER AND MEANS

25.    In order to further the objects and goals of the conspiracy, defendants

**SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, used the following manners and means, among others:

A.    Since at least beginning on or about December 6, 2006, the defendants and others known and unknown to the grand jury created an integrated circuit counterfeiting operation at 5120 110th Avenue North, Clearwater, Florida 33760.

B.    At all times relevant herein, the defendants and others known and unknown to the grand jury maintained an Internet website for the advertisement of name-brand integrated circuits, including www.visiontechcomponents.com.

C.    Beginning on about December 6, 2006, the defendants and others known and unknown to the grand jury acquired from sources in China and Hong Kong, integrated circuits bearing counterfeit marks and imported them into the United States through various ports of entry.

D.    Beginning on or about December 6, 2006, the defendants and others known and unknown to the grand jury imported and had integrated circuits bearing counterfeit marks destined for delivery to the address:  5120 110th Avenue North, Clearwater, Florida 33760.

E.      At all times relevant herein, the defendants and others known and unknown to the grand jury created false "Certificates of Conformance," which purported that all materials shipped on the purchase order conformed to form, fit, and function of the goods specified in the order.

F.      At all times relevant herein, the defendants and others known and unknown to the grand jury distributed integrated circuits bearing counterfeit marks in interstate commerce.

G.      At all times relevant herein, the defendants and others known and unknown to the grand jury derived private and commercial financial gain from their transactions involving integrated circuits bearing counterfeit marks.

H.      At all times relevant herein, the defendants and others known and unknown to the grand jury enriched the companies through which they operated and they enriched themselves with proceeds from the sales of integrated circuits bearing counterfeit marks.

I.      At all times relevant herein, the defendant **SHANNON L. WREN** employed a sales staff to negotiate with potential buyers, answer questions, and fill orders for sales of integrated circuits from, among others, companies located within the United States and abroad, including defense contractors.

J.      At all times relevant herein, the defendants and others known and unknown to the grand jury received proceeds from the sales of integrated circuits bearing counterfeit marks and deposited the monies into bank accounts which were owned by **SHANNON L. WREN**.

K.      From on or about January 1, 2007 through on or about December 31, 2009, defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, generated approximately $15,868,009.62 in gross receipts through

-13-

VisionTech Components arising from the sales of counterfeit integrated circuits.

## OVERT ACTS

26.     Within the District of Columbia, and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, committed the following overt acts, among others:

### *Operation and Formation of Businesses*

A.     At all times relevant herein, defendant **SHANNON L. WREN** owned and operated VisionTech Components, Infuture Electronics, and Carz, Inc.

### *Operation of the Website*

B.     Since on or about December 16, 2002, defendants **SHANNON L. WREN** and **STEPHANIE A. MCCLOSKEY** and others known and unknown to the grand jury, operated the website, www.visiontechcomponents.com advertising brand-name and trademark-protected integrated circuits.  The website is available to anyone accessing the Internet.

### *The Counterfeiting Operation*

C.     At all times relevant herein, defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, conducted an integrated circuit counterfeiting operation located at 5120 110th Avenue North, Clearwater, Florida 33760, by transporting, transferring, or otherwise disposing of to another, for purposes of commercial advantage or private financial gain, or by importing, exporting, obtaining control of, and by

possessing with intent to transport, transfer and dispose of counterfeit integrated circuits in interstate and international commerce.

### *Importation of Integrated Circuits Bearing Counterfeit Marks*

D.      Between on or about December 6, 2006, and continuing until on or about August 18, 2010, defendant **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, imported from China and Hong Kong on 31 separate occasions, approximately 59,540 integrated circuits bearing counterfeit marks, including military-grade markings, valued at approximately $425,293.20, including the following:

(1)      On or about December 6, 2006, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 2,600 counterfeit "Cypress" integrated circuits, valued at approximately $26,000.00, from Chendian, Chaoyang, China.

(2)      On or about December 7, 2006, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 150 counterfeit "Infineon" integrated circuits, valued at approximately $1,995.00, from Chendian, Chaoyang, China.

(3)      On or about January 9, 2007, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 6,850 counterfeit "Cypress" integrated circuits, valued at approximately $7,466.50, from Chendian, Chaoyang, China.

(4)      On or about July 5, 2007, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 660 counterfeit "Infineon" integrated circuits, valued at approximately $10,681.00, from Chendian, Shantou, China.

(5)     On or about August 4, 2007, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 1,000 counterfeit "Philips" integrated circuits, valued at approximately $1,130.00, from Shenzhen, China.

(6)     On or about January 26, 2008, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 15,000 counterfeit "Samsung" integrated circuits, valued at approximately $14,850.00, from Kowloon Bay, Hong Kong.

(7)     On or about July 8, 2008, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 30 counterfeit "Analog Devices," "military-grade," integrated circuits and 2,150 counterfeit "Linear Technologies" integrated circuits, with a combined total valued of approximately $9,471.00, from Chendian, Chaonan Shantou, China.

(8)     On or about July 9, 2008, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 4,010 counterfeit "Samsung" integrated circuits, valued at approximately $62,315.00, from Hong Kong.

(9)     On or about July 10, 2008, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 2,000 counterfeit "Intel" integrated circuits, valued at approximately $36,000.00, from Hong Kong.

(10)    On or about July 15, 2008, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 2,000 counterfeit "Intel" integrated circuits, valued at approximately $36,000.00, from Hong Kong.

(11)    On or about July 24, 2008, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 4,100 counterfeit "Linear Technologies," integrated circuits

and 216 counterfeit "Analog Devices" integrated circuits, with a combined total valued of approximately $23,471.00, from Chendian, ChaoNan, China.

(12)    On or about July 29, 2008, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 1,000 counterfeit "Intel" integrated circuits, valued at approximately $19,450.00, from Hong Kong.

(13)    On or about July 31, 2008, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 110 counterfeit "Texas Instruments" "military-grade" integrated circuits and 2,150 counterfeit "Linear Technologies" integrated circuits, with a combined total value of approximately $11,881.00, from Shenzhen, China.

(14)    On or about December 30, 2008, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 120 counterfeit "National Semiconductor" integrated circuits, valued at approximately $19,450.00, from Hong Kong.

(15)    On January 25, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 510 counterfeit "NEC" integrated circuits, and 670 counterfeit "Analog Devices" integrated circuits, with a combined total value of approximately $1,792.00, from Cheung Sha Wan, Hong Kong.

(16)    On April 28, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 219 counterfeit "Analog Devices" integrated circuits, and 26 counterfeit "Xilinx" integrated circuits and 119 counterfeit "Altera" integrated circuits, with a combined total value of approximately $13,200.45, from Kowloon Bay, Hong Kong.

(17)    On or about August 12, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 1,000 counterfeit "Motorola" integrated circuits, valued at approximately $15,400.00, from Hong Kong, Hong Kong.

(18)    On or about August 24, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 1,500 counterfeit "AMD" integrated circuits, valued at approximately $14,990.00, from Hong Kong, Hong Kong.

(19)    On or about August 24, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 2,000 counterfeit "Advanced Micro Devices" integrated circuits, valued at approximately $19,990.00, from Hong Kong, Hong Kong.

(20)    On September 30, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 2,505 counterfeit "STMicroelectronics" integrated circuits, and 1,020 counterfeit "Phillips" integrated circuits, with a combined total value of approximately $2,262.30, from Hong Kong, Hong Kong.

(21)    On or about October 11, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 320 counterfeit "Intel," integrated circuits and 20 counterfeit "NSC," "military-grade" integrated circuits, with a combined total value of approximately $6,729.50, from Hong Kong, Hong Kong.

(22)    On October 19, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 50 counterfeit "Maxim" integrated circuits, 120 counterfeit "NSC" integrated circuits and 50 counterfeit "National Semiconductor Corporation" integrated circuits (of a different part number), with a combined total value of approximately $1,433.12, from Kowloon Bay, Hong Kong.

-18-

(23)     On December 7, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 60 counterfeit "Analog Devices Incorporated" integrated circuits valued at approximately $1,433.12, from Kowloon Bay, Hong Kong.

(24)     On December 18, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 183 counterfeit "NEC" integrated circuits valued at approximately $3,530.07, from Kowloon Bay, Hong Kong.

(25)     On December 29, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 250 counterfeit "National Semiconductor Corporation" integrated circuits valued at approximately $3,750.00, from Kowloon Bay, Hong Kong.

(26)     On December 30, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 200 counterfeit "NSC" integrated circuits valued at approximately $4,400.00, from Kowloon Bay, Hong Kong.

(27)     On or about February 9, 2009, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 100 counterfeit "Maxim," integrated circuits and 200 counterfeit "STMicroelectronics" integrated circuits, with a combined total value of approximately $1,168.72, from Chaozhou, China.

(28)     On July 29, 2010, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 1,000 counterfeit "Xilinx" integrated circuits valued at approximately $19,780.20, from Kwai Chung, Hong Kong.

(29)     On August 2, 2010, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 720 counterfeit "Mitel" integrated circuits valued at approximately $2,645.92, from Kwai Chung, Hong Kong.

(30)     On August 18, 2010, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 250 counterfeit "Intersil" integrated circuits and 550 counterfeit "Motorola" integrated circuits, with a combined total value of approximately $2,142.82, from Kwai Chung, Hong Kong.

(31)     On August 18, 2010, VisionTech Components, 5120 110th Avenue North, Clearwater, Florida 33760 imported 2,020 counterfeit "NEC" integrated circuits valued at approximately $20,190.00, from Kwai Chung, Hong Kong.

### *Customer Complaints - Sale of Counterfeit Integrated Circuits to Various Purchasers*

E.  On or about August 9, 2007, defendant **SHANNON L. WREN,** **STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, sold 75 counterfeit "National Semiconductor Corporation" integrated circuits bearing the National Semiconductor Corporation trademark, to a company located in the State of California, who in turn was fulfilling a joint procurement with BAE Systems Technology Solutions & Services ("BAE Systems") and the Naval Air Warfare Center Aircraft Division ("NAWCAD"), Detection and Surveillance Branch, Integrated Logistics Engineering.  The ICs were intended for production of ship-based antenna equipment, that is, the Identification Friend Foe ("IFF") system, which is used to determine an airplane's identification and intentions while in flight.

F.       On or about August 13, 2007 and on or about September 5, 2007, defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, transported in interstate commerce, from the State of Florida to the State of California, a total of approximately 75 counterfeit "National Semiconductor Corporation" integrated circuits referenced in paragraph E, above.

G.     On or about June 29, 2009, defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY** and others known and unknown to the grand jury, sold 1 counterfeit "Texas Instruments" "military-grade" integrated circuit bearing the Texas instruments trademark, to a company located in the state of California, that is, MVP Micro, Inc. ("MVP").

H.     On or during June 2009, defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, transported in interstate commerce, from the State of Florida to the State of California, 1 counterfeit "Texas Instruments" "military-grade" integrated circuit referenced in paragraph G, above.

I.      On or during June 2006, defendants **SHANNON L. WREN** and **STEPHANIE A. MCCLOSKEY** and others known and unknown to the grand jury, sold 470 counterfeit "Samsung" integrated circuits bearing the Samsung trademark, to a company located in the state of Connecticut.  The ICs were in fulfillment of a purchase by BAE Systems.

J.      On or during June 2006, defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, transported in interstate commerce, from the State of Florida to the State of Connecticut, 470 counterfeit "Samsung" integrated circuits referenced in paragraph I, above.

K.     On or during April 2009, defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, sold 196 counterfeit "Altera Corporation" integrated circuits bearing the Altera trademark, to a company located in the state of Connecticut.  The ICS were in fulfillment of a purchase by Canberra for the production of the Falcon 5000 hand-held portable nuclear identifier, which is designed to quickly and accurately

determine if a radiation source is present, identify the location of the source, and determine what isotopes are emitting the radiation.

L.      On or about April 7, 2009, defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY** and others known and unknown to the grand jury, transported in interstate commerce, from the State of Florida to the State of Connecticut 196 counterfeit "Altera Corporation" integrated circuit referenced in paragraph K, above.

M.      On or during January 2009, defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, engaged in "Bait and Switch Fraud" with a company located in the State of New York. Defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, sold a total of 2,000 (13 authentic and 1,987 counterfeit) "Motorola" integrated circuits to the New York company. The defendant, **SHANNON L. WREN** was advised by a representative of the buyer that the devices being ordered would be used in a "life critical application." The ICs were in fulfillment of a purchase by Alstom, for an application in the controllers of high-speed trains. As part of the purchase agreement, VisionTech Components was required to provide sample ICs for testing and evaluation. Defendants **SHANNON L. WREN** and **STEPHANIE A. MCCLOSKEY** and others known and unknown to the grand jury, sent the sample ICs to the New York company. The 13 sample devices were in conformance with the expected product specifications.

N.      On or about January 16, 2009, defendants **SHANNON L. WREN,**

**STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, transported

in interstate commerce, from the State of Florida to the State of New York 1,987 counterfeit

"Motorola" integrated circuits referenced in paragraph M, above.

O.      In response to a complaint by a representative of the New York Company about

the counterfeit Motorola devices, the defendant **SHANNON L. WREN** stated in an e-mail,

"Please don't over analyze these parts, anybody can find something wrong with a brand new

Ferrari if we look hard enough.  Come on guys."

P.      On or during April 2008, defendants **SHANNON L. WREN, STEPHANIE A.**

**MCCLOSKEY** and others known and unknown to the grand jury, sold counterfeit "Intel"

integrated circuits bearing the Intel trademark, to a company located in the state of California.

The ICs were in fulfillment of a purchase by Raytheon Missile Systems.  The counterfeit parts

were provided to Raytheon to support production and repairs of A9 (missile) circuit card

assemblies ("CCAs") for a classified application.

Q.      On or about during April 2008, defendants **SHANNON L. WREN,**

**STEPHANIE A. MCCLOSKEY** and others known and unknown to the grand jury, transported

in interstate commerce, from the State of Florida to the State of California 1,500 counterfeit

"Intel" integrated circuits referenced in paragraph P, above.

R.      On or during December 2009, defendants **SHANNON L. WREN,**

**STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, sold 350

counterfeit "Cypress Semiconductor" integrated circuits bearing the Cypress Semiconductor

trademark, to a company located in the state of New York, to fulfill a contract with Northrop

-23-

Grumman for integration into a Beam Steering Control Module board within the Multiple Sub-

Array of the Testable Antenna for the U.S. Navy Cobra Judy Replacement Program (ballistic

missile defense).

S.      On or during December 2009, defendants **SHANNON L. WREN,**

**STEPHANIE A. MCCLOSKEY,** others known and unknown to the grand jury, transported in

interstate commerce, from the State of Florida to the State of New York, 350 counterfeit

"Cypress Semiconductor" integrated circuits referenced in paragraph R, above.

***Sales of Counterfeit Integrated Circuits to an Agent of U.S. Immigration and Customs
Enforcement (The Undercover Buys)***

First Undercover Buy From VisionTech Components

T.      On or about June 24, 2009, defendants **SHANNON L. WREN,**

**STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, conducting

business as "VisionTech Components" transported in interstate commerce, via FedEx, from the

State of Florida to the District of Columbia, integrated circuits, bearing counterfeit marks, that is

the purported trademarks of Texas Instruments Incorporated and Analog Devices Incorporated.

U.      On or about July 21, 2009, defendants **SHANNON L. WREN, STEPHANIE A.**

**MCCLOSKEY,** and others known and unknown to the grand jury, conducting business as

"VisionTech Components," transported in interstate commerce, via the U.S. Postal Service, from

the State of Florida to the District of Columbia a Certificate of Conformance dated June 24,

2009, pertaining to the integrated circuits shipped on June 24, 2009, stating in part:

"This is to certify that all items included in this shipment have been inspected and

conform in all respects to the specifications and requirements applicable to the above

referenced purchase order...the seller guarantees all items supplied in the above

referenced purchase order for 30 days to fot (sic.), form, and function..."

Second Undercover Buy From VisionTech Components

V.      On or about July 21, 2010, defendants **SHANNON L. WREN,** and

**STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury,

conducting business as "VisionTech Components" transported in interstate commerce, via UPS,

from the State of Florida to the District of Columbia, integrated circuits, bearing counterfeit

marks, that is the purported trademarks of National Semiconductor Corporation and Analog

Devices Incorporated.

W.      On or about July 21, 2010, defendants **SHANNON L. WREN, STEPHANIE A.**

**MCCLOSKEY,** and others known and unknown to the grand jury, conducting business as

"VisionTech Components," transported in interstate commerce, via UPS, from the State of

Florida to the District of Columbia a Certificate of Conformance dated July 21, 2010, pertaining

to the integrated circuits shipped on July 21, 2010, stating in part:

"This is to certify that all items included in this shipment have been inspected and

conform in all respects to the specifications and requirements applicable to the above

referenced purchase order.../the seller guarantees all items supplied in the above

referenced purchase order for 30 days to fot (sic.), form, and function..."

**_Engaging in Monetary Transactions in Property Derived From Proceeds of Crime_**

X.      On or about September 18, 2007, defendants **SHANNON L. WREN,**

**STEPHANIE A. MCCLOSKEY,** and others known and unknown, purchased a 2005 Bentley,

Arnage, paid in part, with check number 6765, in the amount of $25,000.00, drawn on Regions

bank account number XXXXXX**8681**, account in the name of Infuture Electronics DBA VisionTech Components.

Y.      On or about March 29, 2007, defendant **SHANNON L. WREN,** and others known and unknown to the grand jury, purchased a 2003 Ferrari, Spider 360, with a cashier's check, in the amount of $155,022.00, monies having been drawn from Regions bank account number XXXXXX**8681**, account in the name of Infuture Electronics DBA VisionTech Components.

Z.      On or about June 13, 2007, defendant **SHANNON L. WREN,** and others known and unknown to the grand jury, purchased real estate, located at 12450 74th Avenue, Seminole, Florida, with check number 6450, in the amount of $100,000.00, monies having been drawn from Regions bank account number XXXXXX**8681**, account in the name of Infuture Electronics, DBA VisionTech Components.

AA.     On or about July 2, 2007, defendant **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, placed monies in a trust account, with check number 6530, in the amount of $542,551.12, drawn on Regions bank account number XXXXXX**8681**, account in the name of Infuture Electronics DBA VisionTech Components.

BB.     On or about July 9, 2008, defendant **SHANNON L. WREN,** and others known and unknown to the grand jury, purchased real estate located at 13084 82nd Avenue North, Seminole, Florida, with a cashier's check, in the amount of $224,125.98, monies drawn having been drawn from Regions bank account number XXXXXX**0799**, account in the name of VisionTech Components, LLC.

-26-

CC.     On or about November 20, 2008, defendant **SHANNON L. WREN,** and others known and unknown to the grand jury, purchased a 2007 Rolls Royce, with check number 8191, in the amount of $200,000.00, monies drawn having been drawn from Regions bank account number XXXXXX0799, account in the name of VisionTech Components, LLC.

DD.     On or about March 5, 2008, defendant **SHANNON L. WREN,** and others known and unknown to the grand jury, purchased a 2008 Nissan Maxima, with check number 7361, in the amount of $24,154.85, monies drawn having been drawn from Regions bank account number XXXXXX0799, account in the name of VisionTech Components, LLC.

EE. On or about December 18, 2008, six days after Cyclone Driver, LLC was formed in the State of Delaware, the defendant **SHANNON L. WREN** transferred ownership of five (5) Florida real estate properties, which had been held in his name, to Cyclone Driver, LLC.

**(Conspiracy, Aiding and Abetting, Causing an Act to be Done,** in violation of Title 18, United States Code, Sections 371 and 2).

## COUNTS TWO THROUGH SEVEN – TRAFFICKING IN COUNTERFEIT GOODS

## COUNT TWO

1.      The allegations set forth in paragraphs 1 through 22 and paragraphs 24 through

26 in Count One of this Indictment are hereby re-alleged and incorporated as if fully set forth

herein.

2.      On or about June 24, 2009, in the District of Columbia and elsewhere,

defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** unindicted Co-

conspirator "S.P.," and others known and unknown to the grand jury, did intentionally traffic and

attempt to traffic in goods, that is integrated circuits marked part number SMJ34020AGBM40,

while knowingly using on and in connection with such goods a counterfeit mark, to wit, a

spurious mark identical to and substantially indistinguishable from a registered trademark of

Texas Instruments Corporation, registration number 2,250,065, which includes the word mark

"TI" inside a design of the map of Texas, a mark that has been in use since 1996, for among other

goods and services, integrated circuits, and is registered for those goods on the principal register

of the United States Patent and Trademark Office, the use of which counterfeit mark was likely

to cause confusion, to cause mistake, and to deceive.

> **(Trafficking in Counterfeit Goods or Services, Aiding and Abetting, Causing an Act to be Done,** in violation of Title 18, United States Code, Sections 2320(a), and 2).

## COUNT THREE

1.      The allegations set forth in paragraphs 1 through 22 and paragraphs 24 through

26 in Count One of this Indictment are hereby re-alleged and incorporated as if fully set forth

herein.

2.      On or about June 24, 2009, in the District of Columbia and elsewhere, defendants

**SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** unindicted Co-Conspirator "S.P.,"

and others known and unknown to the grand jury, did intentionally traffic and attempt to traffic

in goods, that is integrated circuits marked part number JM38510/32502BRA, while knowingly

using on and in connection with such goods a counterfeit mark, to wit, a spurious mark identical

to and substantially indistinguishable from a registered trademark of Texas Instruments

Corporation, registration number 2,250,065, which includes the word mark "TI" inside a design

of the map of Texas, a mark that has been in use since 1996, for among other goods and services,

integrated circuits, and is registered for those goods on the principal register of the United States

Patent and Trademark Office, the use of which counterfeit mark was likely to cause confusion, to

cause mistake, and to deceive.

> **(Trafficking in Counterfeit Goods or Services, Aiding and Abetting, Causing an Act to be Done,** in violation of Title 18, United States Code, Sections 2320(a), and 2).

## COUNT FOUR

1.      The allegations set forth in paragraphs 1 through 22 and paragraphs 24 through

26 in Count One of this Indictment are hereby re-alleged and incorporated as if fully set forth

herein.

2.      On or about June 24, 2009, in the District of Columbia and elsewhere,

defendants **SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** unindicted Co-

conspirator "S.P.," and others known and unknown to the grand jury, did intentionally traffic and

attempt to traffic in goods, that is integrated circuits marked part number JM38510/11302BRA,

while knowingly using on and in connection with such goods a counterfeit mark, to wit, a

spurious mark identical to and substantially indistinguishable from a registered trademark of

Analog Devices Corporation, registration number 1,717,784, which includes the mark drawing of

a triangle inside a rectangle, a mark that has been in use since 1991, for among other goods and

services, integrated circuits, and registered for those goods on the principal register of the United

States Patent and Trademark Office, the use of which counterfeit mark was likely to cause

confusion, to cause mistake, and to deceive.

> **(Trafficking in Counterfeit Goods or Services, Aiding and Abetting, Causing an Act
> to be Done,** in violation of Title 18, United States Code, Sections 2320(a), and 2).

.

## COUNT FIVE

1.      The allegations set forth in paragraphs 1 through 22 and paragraphs 24 through

26 in Count One of this Indictment are hereby re-alleged and incorporated as if fully set forth

herein.

2.      On or about July 21, 2010, in the District of Columbia and elsewhere, defendants

**SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** unindicted Co-Conspirator "T.R.,"

and others known and unknown to the grand jury, did intentionally traffic and attempt to traffic

in goods, that is integrated circuits marked part number LM10H/883C, while knowingly using on

and in connection with such goods a counterfeit mark, to wit, a spurious mark identical to and

substantially indistinguishable from a registered trademark of National Semiconductor

Corporation, registration number 0824532, which includes the mark drawing of the letter "N" in

stylized form, a mark that has been in use since 1994, for among other goods and services,

integrated circuits, and registered for those goods on the principal register of the United States

Patent and Trademark Office, the use of which counterfeit mark was likely to cause confusion, to

cause mistake, and to deceive.

> **(Trafficking in Counterfeit Goods or Services, Aiding and Abetting, Causing an Act
> to be Done,** in violation of Title 18, United States Code, Sections 2320(a), and 2).

## COUNT SIX

1.      The allegations set forth in paragraphs 1 through 22 and paragraphs 24 through

26 in Count One of this Indictment are hereby re-alleged and incorporated as if fully set forth

herein.

2.      On or about July 21, 2010, in the District of Columbia and elsewhere, defendants

**SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** unindicted Co-Conspirator "T.R.,"

and others known and unknown to the grand jury, did intentionally traffic and attempt to traffic

in goods, that is integrated circuits marked part number 574ASD/883B, while knowingly using

on and in connection with such goods a counterfeit mark, to wit, a spurious mark identical to and

substantially indistinguishable from a registered trademark of Analog Devices Corporation,

registration number 1,717,784, which includes the mark drawing of a triangle inside a rectangle,

a mark that has been in use since 1991, for among other goods and services, integrated circuits,

and registered for those goods on the principal register of the United States Patent and Trademark

Office, the use of which counterfeit mark was likely to cause confusion, to cause mistake, and to

deceive.

> **(Trafficking in Counterfeit Goods or Services, Aiding and Abetting, Causing an Act
> to be Done,** in violation of Title 18, United States Code, Sections 2320(a), and 2).

## COUNT SEVEN

1.      The allegations set forth in paragraphs 1 through 22 and paragraphs 24 through

26 in Count One of this Indictment are hereby re-alleged and incorporated as if fully set forth

herein.

2.      On or about July 21, 2010, in the District of Columbia and elsewhere, defendants

**SHANNON L. WREN, STEPHANIE A. MCCLOSKEY,** unindicted Co-Conspirator "T.R.,"

and others known and unknown to the grand jury, did intentionally traffic and attempt to traffic

in goods, that is integrated circuits marked part number 624SD/883B, while knowingly using on

and in connection with such goods a counterfeit mark, to wit, a spurious mark identical to and

substantially indistinguishable from a registered trademark of Analog Devices Corporation,

registration number 1,717,784, which includes the mark drawing of a triangle inside a rectangle,

a mark that has been in use since 1991, for among other goods and services, integrated circuits,

and registered for those goods on the principal register of the United States Patent and Trademark

Office, the use of which counterfeit mark was likely to cause confusion, to cause mistake, and to

deceive.

> **(Trafficking in Counterfeit Goods or Services, Aiding and Abetting, Causing an Act
> to be Done,** in violation of Title 18, United States Code, Sections 2320(a), and 2).

## COUNTS EIGHT THROUGH TEN – MAIL FRAUD

1.      The allegations set forth in paragraphs 1 through 22 and paragraphs 24 through

26 in Count One of this Indictment are hereby re-alleged and incorporated as if fully set forth

herein.

2.      From on or about June 16, 2009 through on or about June 26,

2009, in the District of Columbia and elsewhere, defendants, **SHANNON L. WREN,**

**STEPHANIE A. MCCLOSKEY,** and unindicted Co-Conspirators "S.P., and "T.R.," and others

known and unknown to the grand jury, with the intent to defraud, did knowingly devise a scheme

and artifice to defraud and obtain money by materially false and fraudulent pretenses,

representations and promises, the manner and means of which are described in Count One, and

for the purpose of executing such scheme did use an interstate commercial carrier and the United

States mail.

3.      On or about the dates set forth below, defendants **SHANNON L. WREN,**

**STEPHANIE A. MCCLOSKEY,** and others known and unknown to the grand jury, for the

purpose of executing the above-described scheme and artifice to defraud and deprive, did cause

to be placed in the custody of a commercial interstate carrier or the United States Postal Service,

the following items:

| COUNT | DATE | MAIL MATTER | MAILED FROM | MAILED TO |
|-------|------|-------------|-------------|-----------|
| Eight | 6/24/09 | Integrated Circuits | Florida | District of Columbia |
| Nine | 7/17/09 | Certificate of Conformance | Florida | District of Columbia |
| Ten | 7/21/10 | Integrated Circuits & Certificate of Conformance | Florida | District of Columbia |

**(Mail Fraud, Aiding and Abetting, Causing an Act to be done, in violation of Title 18, United States Code, Sections 1341 and 2)**

## NOTICE OF FORFEITURE
## CRIMINAL FORFEITURE ALLEGATION

1.      The allegations set forth in Count One, and Counts Eight through Ten of this Indictment are re-alleged as though set forth fully herein and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      The allegations set forth in Counts Two through Seven of this Indictment are re-alleged as though set forth fully herein and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 2323(a) and (b).

3.      As a result of the offenses alleged in this Indictment , the defendants, **SHANNON L. WREN** and **STEPHANIE A. MCCLOSKEY**, shall forfeit to the United States, (a) any and all property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offenses of conspiracy, trafficking in counterfeit goods or services, and a mail fraud scheme, (b) any article, the making or trafficking of which is prohibited by Title 18, United States Code, Section 2320, (c) any property used, or intended to be used in any manner or part to commit or facilitate the commission of trafficking in counterfeit goods or services, including, but not limited to:

### Money Judgment

At least in the amount of $15,868,009.62, which represents a sum of money constituting, or derived from, proceeds obtained, directly or indirectly, as a result of conspiracy, in violation of Title 18, United States Code, Section 371, trafficking in counterfeit goods or services, in violation of Title 18, United States Code, Section 2320, and a mail fraud scheme, in violation of Title 18, United States Code, Section 1341.

-36-

4.      By virtue of the commission of the felony offenses charged in this Indictment, any

and all interest that defendants **SHANNON L. WREN** and **STEPHANIE A. MCCLOSKEY**

have in property constituting, or derived from, proceeds obtained directly or indirectly as the

result of conspiracy, trafficking in counterfeit goods or services, or a mail fraud scheme, is vested

in the United States and hereby forfeited to the United States pursuant to Title 18, United States

Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 18, United

States Code, Section 2323(b).  If, as a result of any act or omission of defendants **SHANNON L.**

**WREN** and **STEPHANIE A. MCCLOSKEY**, the property identified above:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third person;

    c.      has been placed beyond the jurisdiction of the Court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property that cannot be subdivided

    without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section

981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 18, United States Code,

Section 2323(b), and incorporating by reference Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of said defendants up to the value of said property listed

above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code,
Section 981(a)(1)(C), Title 28 United States Code, Section 2461(c),
and Title 18, United States Code, Section 2323(a) and (b)).**

A TRUE BILL

_____

FOREPERSON

_Ronald C. Machen Jr. / JM_
RONALD C. MACHEN JR.
ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA